FILED
2022 Aug-23  PM 04:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES LAMB** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER: _____** |
| | ) | |
| **LIFE INSURANCE COMPANY** | ) | |
| **OF NORTH AMERICA** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now the Plaintiff, James Lamb, and hereby files his Complaint against Life Insurance Company of North America.

## PARTIES

1.     The Plaintiff, James Lamb ("Mr. Lamb"), is an insured under Group Long Term Disability Plan for employees of PowerSecure Inc., identified as Group Insurance Policy LK-965761 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2.     Defendant, Life Insurance Company of North America ("LINA"), is the Administrator of the Plan. Upon information and belief, LINA is a foreign corporation incorporated in the State of Pennsylvania, which conducts business generally in the State of Alabama and specifically within this District.

1

## JURISDICTION AND VENUE

3.      This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Mr. Lamb brings this action to recover benefits due to him pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce his rights under the Plan pursuant to 29 U.S.C. §1132(a)(3).  This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4.      The Plaintiff in this case was subjected to improper claim handling procedures by LINA as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Mr. Lamb's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit Plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Mr. Lamb, as an employee insured for disability, was supposed to be treated as a beneficiary by LINA as a statutory fiduciary. Instead, LINA has breached those duties and victimized Mr. Lamb by

engaging in improper claim handling procedures. As described in more detail below, LINA has clearly engaged in bad faith claim handling and Mr. Lamb, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Mr. Lamb is an insured for benefits under the Plan. LINA is the administrator of the Plan. The Plan provides insureds, like Mr. Lamb, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6.     At all relevant times, Mr. Lamb was employed by PowerSecure Inc. and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7.     Mr. Lamb, a man thirty-six (36) years of age, worked at PowerSecure Inc. until his disabilities forced him to stop working on or about June 12, 2020.

8.     Mr. Lamb was employed by PowerSecure Inc. as a Parts Technician. This job required him to fabricate, modify, or repair mechanical instruments. This required him to apply knowledge of mechanics, metal properties, shop mathematics, and machining procedures as well as to use machine tools, welding, and heat treating equipment, precision measuring instruments, and hand tools. This occupation necessitated lifting, carrying, pushing, and pulling up to fifty pounds occasionally, twenty-five pounds frequently, and ten pounds constantly, as well as frequently utilizing near acuity and exposure to moderate noise intensity levels.

3

9.     Mr. Lamb's medical disabilities include migraines, bipolar disorder, and anxiety. The symptoms of his impairments and the side effects of the medications and treatment prescribed render Mr. Lamb unable to perform any job.

10.     At all relevant times, and prior to the denial of Mr. Lamb's benefits, he was under the consistent care of Nurse Practitioner Ladonna W. Cook ("Ms. Cook"), Carolyn Norris, LCSW ("Ms. Norris"), and Dr. Keshavpal Reddy ("Dr. Reddy").

11.     In a statement dated December 4, 2020, Ms. Cook noted that Mr. Lamb experienced approximately two (2) migraine episodes per week, each episode lasting approximately forty-eight (48) hours and "render[ing] him unable to perform his job."

12.     LINA's Nurse Case Manager reached out to Ms. Cook on March 29, 2021 and was informed that Ms. Cook supported a no-work restriction based upon the severity of Mr. Lamb's migraine symptoms.

13.     LINA reached out to Dr. Reddy and Ms. Norris in a letter dated April 22, 2021, to which they replied that Mr. Lamb experienced mood swings, over-reactivity, unreliable emotional presentation, mood instability, lack of focus, and "inability to stay on the job consistently."

14.     By letter dated May 6, 2021, LINA wrongfully denied Mr. Lamb's LTD benefits.

15.     The Plan at issue, as governed by ERISA and relied upon to deny Mr.

Lamb's LTD benefit states, in part:

> The Employee is considered Disabled if, solely because of Injury or
> Sickness, he or she is:
>
> 1. unable to perform the material duties of his or her Regular
>    Occupation; and
>
> 2. unable to earn 80% or more of his or her Indexed Earnings from
>    working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the
> Employee is considered Disabled if, solely due to Injury or Sickness,
> he or she is:
>
> 1. unable to perform the material duties of any occupation for which
>    he or she is, or may reasonably become, qualified based on
>    education, training, or experience; and
>
> 2. unable to earn 60% or more of his or her Indexed Earnings.

16.    LINA's denial of Mr. Lamb's LTD benefits was based at least in part
upon the reviews of consulting Medical Directors Board Certified in Neurology and
in Neuropsychology and Psychology.

17.    Contradicting the opinion of Mr. Lamb's medical providers, Lina's
Neurology Medical Director opined that "[t]he presence of pain is not an indicator
of an existing limitation and does not necessitate a work restriction" and that Mr.

Lamb's inability to complete tasks while experiencing migraines was not indicative of functional limitation but was instead "a matter of tolerance."

18.     LINA's Neuropsychology and Psychology Medical Director concluded that Mr. Lamb's symptoms were inconsistent with a limiting behavioral condition despite Dr. Reddy's and Ms. Norris' statements to the contrary.

19.     On November 1, 2021, by and through counsel, Mr. Lamb appealed the denial of his LTD benefits. Mr. Lamb included with his appeal letter additional records as well as personal declarations.

20.     In support of his appeal, Mr. Lamb submitted a declaration pursuant to 28 U.S.C. § 1746, through which he outlined the effects of his disabling condition on his activities of daily living and his ability to return to work. Under penalty of perjury, Ms. Lamb noted that, although he was compliant with a regimen of migraine medications and injections, he continued to experience severe migraines as well as negative medication side effects, making it so that "I still can't live a normal life or work."

21.     Mr. Lamb's wife, Alison Lamb, also submitted a declaration in support of the appeal, pursuant to 28 U.S.C. § 1746. Under penalty of perjury, Mrs. Lamb noted the frequency, severity, and unpredictability of Mr. Lamb's migraines, as well as his inability to function and perform daily tasks while experiencing a migraine episode.

22.     Despite providing proof of his disability both before the termination of benefits and throughout the appeals process, LINA refused to award Mr. Lamb's LTD benefits and issued its final termination by letter dated February 16, 2022.

23.     In its final termination letter dated February 16, 2022, LINA relied on the opinions of paid medical reviewers Dr. Eric V. Barton ("Dr. Barton"), Dr. Marcus Goldman ("Dr. Goldman"), and Dr. Stephen Selkirk ("Dr. Selkirk").

24.     Dr. Barton, whom has never seen nor treated Mr. Lamb, acknowledged the presence of Mr. Lamb's migraine symptoms but predicated the assignment of restrictions upon the presence of abnormal physical examinations, contradicting both the opinions of Mr. Lamb's treating physicians that his migraines were severe and disabling as well as the generally normal examination findings which typically accompany medical diagnoses of migraines.

25.     Dr. Selkirk, whom has never seen nor treated Mr. Lamb, also questioned the validity of Mr. Lamb's reports of the frequency and severity of his migraine symptoms due to benign physical findings which – as noted above – do not contradict a migraine diagnosis.

26.     Although Mr. Lamb explained in his appeal of November 1, 2021 that he experienced great difficulty in affording and maintaining medical treatment, Dr. Selkirk asserted that functional limitations were not warranted because the claimant had no emergent encounters or consultations with headache specialists.

27.     Dr. Goldman, whom has never seen nor treated Mr. Lamb, evaluated Mr. Lamb's claim from a psychiatric perspective and, like Dr. Selkirk, asserted that the frequency and intensity of treatment did not indicate functional limitation.

28.     Despite the opinion of Mr. Lamb's mental health providers, who determined him to be incapable of working due to overwhelming symptoms and loss of focus and concentration, as well as Mr. Lamb's inability to afford more frequent or in-depth medical treatment, Dr. Goldman asserted that the claimant required no restrictions or limitations.

29.     Although Dr. Barton, Dr. Selkirk, and Dr. Goldman never treated Mr. Lamb, spoke to Mr. Lamb, or spoke with Mr. Lamb's treating physicians, these paid reviewers opined that Mr. Lamb had the functionality to return to his previous occupation.

30.     By and through counsel, Mr. Lamb responded to these paid reviews in a letter dated February 14, 2022.

31.     Nevertheless, LINA upheld the determinations of its paid reviewers and issued its final denial on February 16, 2022.

32.     As of this date, Mr. Lamb has been denied benefits rightfully owed to him under the Plan.

33.     Mr. Lamb has met and continues to meet the Plan's definition of disabled.

34.    Mr. Lamb has exhausted any applicable administrative review procedures and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

35.    LINA's refusal to pay benefits has caused tremendous financial hardship on Mr. Lamb.

## STANDARD OF REVIEW

36.    A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

37.    When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

38.    Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to LINA or to any other entity who may have adjudicated Mr. Lamb's claim. Therefore, the Court should review Mr. Lamb's claim for benefits under a *de novo* standard.

39.    Upon information and belief, LINA evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

40.    LINA has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Mr. Lamb's claim for benefits should be reviewed

by this Court under a *de novo* standard.

41.    In the alternative, if the Court finds that LINA is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion as LINA's decision to deny Mr. Lamb's LTD benefits was arbitrary and capricious.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

42.    LINA has wrongfully denied LTD benefits to Mr. Lamb, in violation of the policy provisions and ERISA, for the following reasons:

(a) Mr. Lamb is totally disabled, in that he is prevented from performing the material duties of his own, or of any, occupation;

(b) Mr. Lamb is entitled to disability benefits under the terms of the Plan, as he meets the Plan's definition of disability and he has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) LINA failed to accord proper weight to the evidence in the administrative record showing that Mr. Lamb is totally disabled;

(d) LINA's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) LINA failed to obtain and consider relevant information pertaining to Mr. Lamb's disability before it made a final determination on his claim for LTD benefits;

(f) LINA wrongfully denied Mr. Lamb a full, fair and impartial review of his benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of denying his benefits claim;

(g) LINA failed to give proper weight to Mr. Lamb's own accounts regarding the debilitating effects of his medical conditions;

(h) LINA ignored the records and opinions of Mr. Lamb's treating physicians which show that Mr. Lamb is totally disabled, and instead based its decision to deny benefits on its internal review by LINA staff members and its paid reviewers, who had never seen or treated Mr. Lamb, never spoke with his treating physicians about the nature of his disability, and who were not as qualified as Mr. Lamb's treating physicians to formulate opinions regarding the nature and extent of his disability;

(i) LINA failed to exercise reasonable flexibility in its claims review

11

process to assure Mr. Lamb a full, fair review, well-reasoned, and principled of his claim;

(j) LINA administered Mr. Lamb's claim for LTD benefits while acting under an inherent and substantial conflict of interest in that LINA served both as fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Mr. Lamb's interests in wrongfully terminating his LTD benefits and failing to administer the Plan as an impartial decision-maker, free of such conflict of interest, would;

(k) LINA made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(l) LINA acted in bad faith by denying Mr. Lamb's claim based upon the inability of LINA's paid reviewers to find Mr. Lamb disabled, and otherwise failed to administer the Plan honestly, fairly and in good faith, and to at all times act in Mr. Lamb's best interests;

(m) LINA failed to support the termination of benefits with substantial evidence;

(n) LINA imposed a standard not required by the Plan's provisions, by requiring objective evidence of Mr. Lamb's subjective medical

conditions where such evidence cannot be reasonably provided;

(o) LINA denied Mr. Lamb's claim for a lack of objective medical evidence when Mr. Lamb has provided ample subjective evidence of a disability and LINA has neither identified any objective evidence that Mr. Lamb could have supplied to support the claim and has not had Mr. Lamb undergo an independent medical examination or a similar in-person probative procedure to test the validity of his complaints;

(p) LINA failed to consider Mr. Lamb's non-exertional limitations caused by his disability, such as the side effects of his prescribed medications, his ability to regularly attend work, and the effect his disability has on his concentration, persistence and pace when performing the material duties of his occupation;

(q) LINA's denial of Mr. Lamb's LTD benefits failed to provide a detailed explanation and the basis of its disagreement with the opinions of Mr. Lamb's treating physicians;

(r) LINA wrongfully denied Mr. Lamb's LTD benefits in such other ways to be shown through discovery and/or hearing.

43.    As a result of the foregoing, the relief to which Mr. Lamb is entitled includes: (1) monthly LTD income benefits to Mr. Lamb, (2) payment of back

benefits from June 13, 2020 to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress LINA's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (5) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

44.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

45.     At all times relevant to this action, Mr. Lamb was a participant of the Plan underwritten by LINA and issued to PowerSecure, Inc. and was eligible to receive disability benefits under the Plan.

46.     As more fully described above, the denial and refusal to pay Mr. Lamb's benefits under the Plan for the period from at least on or about June 13, 2020 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Mr. Lamb constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1.      A judgment ordering the applicable standard of review in this case is *de novo*;

2.      A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying his LTD benefits owed to him through the Plan;

3.      In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4.      Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Mr. Lamb's LTD benefits, that Mr. Lamb is entitled to a continuation of future LTD benefits from Defendant pursuant to the Plan;

5.      Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff, enjoining Defendant from further violations of its fiduciary duties, and directing Defendant to take all actions necessary to administer the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

15

6.     A judgment ordering Defendant to pay Mr. Lamb's LTD benefits from June 13, 2020 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7.     An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8.     For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 23rd day of August, 2022.

> */s/ Peter H. Burke*_____
> Peter H. Burke (ASB-1992-K74P)
> pburke@burkeharvey.com
> BURKE HARVEY, LLC
> 3535 Grandview Parkway, Suite 100
> Birmingham, Alabama 35243
> Phone:  205-747-1901
> Fax:     877-718-9952
> *Attorney for Plaintiff James Lamb*

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Life Insurance Company of North America
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL  36104